UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JUSTIN SATHUE,

                        Plaintiff,

v.

NIAGARA CITY POLICE
DEPARTMENT, et al.,

                        Defendants.

Case # 17-CV-747-FPG

DECISION AND ORDER

*Pro se* Plaintiff Justin Sathue has filed a Complaint (ECF No. 2), Amended Complaint (ECF No. 3), and proposed Second Amended Complaint[1] (ECF No. 7-1) against Defendants Niagara City Police Department (the Niagara Falls Police Department), Sheriff of Niagara County (the Niagara County Sheriff's Office),[2] Niagara Falls Mayor Paul Dyster, the State of New York, and Niagara Falls Police Superintendent E. Bryan DalPorto. Plaintiff also seeks permission to proceed *in forma pauperis* (ECF No. 1). The Court finds that Plaintiff meets the statutory requirements to proceed as a poor person pursuant to 28 U.S.C. § 1915(a). Therefore, Plaintiff's request to proceed *in forma pauperis* is granted. The Court has also screened Plaintiff's Amended Complaint with respect to the 28 U.S.C. § 1915(e) criteria, as discussed below.

## BACKGROUND

Plaintiff takes issue with three incidents involving law enforcement in Niagara Falls, New York. First, he describes an altercation that occurred at a Panera Bread location on approximately March 8, 2017. ECF No. 3, at 2. Plaintiff claims that, in response to another customer allegedly

---

[1] Plaintiff's proposed Second Amended Complaint is titled "Third Amended Complaint," but—by the Court's review—it is the second.

[2] Plaintiff's descriptions of the party he lists as "Sheriff of Niagara County" seem to indicate that the intended defendant is the Niagara County Sheriff's Office. *See, e.g.*, ECF No. 3, at 2 (listing Defendant as "Niagara County Sheriff's Office"); ECF No. 7-1, at 2 (assigning the descriptor "Niagara Sheriff" to "Niagara County Sheriff's Office").

harassing him, he threw a menu at that customer, who then called the police. *Id.* Four officers responded to the call and "interrogated" Plaintiff. *Id.* Based on one officer's "authoritarian manner," Plaintiff filed complaints with Governor Cuomo, Mayor Dyster, and Superintendent DalPorto. *Id.*

Second, Plaintiff recounts an incident from approximately March 31, 2017 that occurred at a Niagara Falls 7-Eleven location. *Id.* at 3. He maintains that, when he left the store, a police officer "was waiting outside in an aggressive, inhumane, grossly unprofessional mannerism [sic]." *Id.* By Plaintiff's account, the officer approached him and "started to interrogate [him] . . . for almost 4 minutes." *Id.* The exchange ended when Plaintiff "just left, as [he] was not being detained or arrested." *Id.*

Finally, Plaintiff describes an encounter from July 14, 2017, when he was walking on Niagara Falls Boulevard while wearing a weighted running vest, bathing suit, and weightlifting shoes. *Id.* He claims that an officer stopped him, drew his gun, and told him to put his hands up. *Id.* at 8. Plaintiff states that he threw his phone and put his hands up, at which point "at least six other officers" arrived. *Id.* He "was placed in handcuffs . . . asked a series of interrogatory questions . . . . [and] searched." *Id.* When Plaintiff asked why he was being questioned and searched, officers informed him that someone had called in a report that he was wearing explosives. *Id.* Plaintiff also maintains that an officer attributed the "aggressive[]" response to Plaintiff carrying a gun, which Plaintiff denies. *See id.* at 4.

In describing these three exchanges with law enforcement, Plaintiff only mentions a search in the context of the running-vest incident. However, later in his Amended Complaint, he alleges that "[s]earching my person was part of each and every one of these instances where I was forced

to succumb to the blatant and gross abuse of power of a civil servant." *Id*. Accordingly, the Court understands Plaintiff to be claiming that he was also searched during each encounter.

## LEGAL STANDARD

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). Pursuant to § 1915(e), the Court shall dismiss a complaint in a civil action if, at any time, the Court determines that the action (1) "is frivolous or malicious"; (2) "fails to state a claim on which relief may be granted"; or (3) "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)–(iii). Generally, the Court will afford a *pro se* plaintiff an opportunity to amend or be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (internal quotation marks omitted). However, leave to amend pleadings is properly denied where amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend.").

## DISCUSSION

Plaintiff brings his claims "under 42 U.S.C. §14141 ('Law Enforcement Misconduct Statute'), 18 U.S.C. §242 ('Conspiracy against Rights'), 18 U.S.C. §242 ('Deprivation of Rights under color of law'), 18 U.S.C. [§ ]1961 ('Racketeering [sic] and Corrupt Organizations Act') and the Fourth Amendment." ECF No. 3, at 1. Plaintiff also references the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York State Sexual Orientation Non-Discrimination Act. *See id.* at 4. He seeks the following relief: "$2,000,000.00 for emotional

distress, public humiliation and undue stress directly relating to the actions or lack thereof of the Defendants"; "[i]mposing reasonable restrictions on the Defendants to prevent future unlawful occurrences pursuant to 18 U.S.C. 1964 (a)"; "[c]ompensation pursuant to 18 U.S.C. §1964 (c) that this court deems reasonable, just and proper"; "Punitive, Special, and Aggravated Damages in an amount this court deems just and proper"; "[c]ompensation in an amount this court deems reasonable for malicious prosecution, attempted false arrest, Gross/Ongoing Misconduct, Harassment, Slander, Prejudice and deliberate discrimination"[3]; "[a]ttorney fees, costs and disbursements as well as the cost to litigate and prosecute this action; and "[a] *collective* letter of apology, certification and promise from the Niagara City Police Department, Sheriff of Niagara County, [Mayor] Paul Dyster and Superintendent E[.] Bryan DalPorto that this type of treatment will not continue." ECF No. 3, at 5.

Reading Plaintiff's Amended Complaint liberally, a number of his claims are legally frivolous, and—even under a liberal construction—he fails to state a claim against any suable defendant. Upon review, the proposed Second Amended Complaint fares no better than the Amended Complaint: it adds little factual substance, and it still fails to state a claim against any defendant subject to suit.

## I. Criminal Statutes

Plaintiff attempts to bring claims under 18 U.S.C. §§ 241 and 242. Both statutes are criminal, and neither creates a private cause of action. *See, e.g.*, *Robinson v. Overseas Military*

---

[3] Plaintiff mentions these causes of action for the first time in his prayer for relief. *See* ECF No. 3, at 5. Nevertheless, the Court has reviewed the pleadings with respect to these claims and determined that Plaintiff fails to state a claim on any viable front. The only cognizable and otherwise-unaddressed federal claim appears to be malicious prosecution under the Fourth Amendment, but Plaintiff has not actually been prosecuted. *See, e.g.*, *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016) (explaining that "the commencement or continuation of a criminal proceeding" is part of the requisite showing "under both [§] 1983 and New York State law"). To the extent that the mention of "attempted false arrest" is construed as alleging a false arrest under the Fourth Amendment, this claim would fail for the reasons discussed *infra* regarding any claims brought pursuant to § 1983 (as would the malicious prosecution claim).

4

*Sales Corp.,* 21 F.3d 502, 511 (2d Cir. 1994); *Muhammad v. Smith*, No. 3:13-cv-760 (MAD/DEP), 2014 WL 3670609, at *7 (N.D.N.Y. July 23, 2014); *Lodrini v. Sebelius*, No. 14-CV-3137(SJF)(ARL), 2014 WL 2446073, at *4 (E.D.N.Y. May 29, 2014). Accordingly, the claims Plaintiff brings pursuant to those statutes must be dismissed under 28 U.S.C. § 1915(e)(2)(B)(i) as legally frivolous, because they lack "an arguable basis . . . in law." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also, e.g.*, *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order) ("[C]laims based on the violation of federal criminal statutes, such as 18 U.S.C. §§ 241-242[] . . . are not cognizable, as federal criminal statutes do not provide private causes of action.").

## II. Law Enforcement Misconduct Statute

Plaintiff also attempts to bring claims pursuant to 42 U.S.C. § 14141, since transferred to 34 U.S.C. § 12601. However, § 12601 provides no private right of action, *e.g.*, *Miller v. Carpinello*, No. 06 CV 12940(LAP), 2007 WL 4207282, at *5 (S.D.N.Y. Nov. 20, 2007)—it only authorizes the Attorney General to obtain relief, *see* 34 U.S.C. § 12601(b). Accordingly, these claims must be dismissed under 28 U.S.C. § 1915(e)(2)(B)(i) as legally frivolous.

## III. Discrimination Claim

In his Amended Complaint, Plaintiff alleges that his exchanges with law enforcement were "a sole result" of his "skin color (brown/tan) . . . national origin and sexual orientation." *See* ECF No. 3, at 4; *see also id.* at 2 (specifying that Plaintiff is "an Italian, Hebrew American citizen" and "member of the LGBT community"). Plaintiff does not explain this claim any further, nor does he provide any facts to suggest discrimination on any of these bases. Thus, Plaintiff's broad and conclusory allegation of discrimination must be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failing to state a claim on which relief can be granted.

Even if the Court looks to the proposed Second Amended Complaint, Plaintiff's twice-amended discrimination claim would still fail to survive. In the proposed Second Amended Complaint, Plaintiff specifically alleges violations of Title II of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a–2000a-6, which prohibits discrimination in designated places of public accommodation. *See* 42 U.S.C. § 2000a. He claims that the running-vest incident on July 14, 2017 occurred as "a sole result of [his] skin color, [his] national origin and [his] sexual orientation." ECF No. 7-1, at 17–18. Notably, however, the proposed Second Amended Complaint does not include any reference to Plaintiff's own race, color, or national origin. *See* ECF No. 7-1; *see also* 42 U.S.C. § 2000a(a) (barring discrimination "on the ground of race, color, religion, or national origin" in specified places of public accommodation). As a result, neither the Amended Complaint nor the proposed Second Amended Complaint includes any facts suggesting discrimination on the claimed bases. Moreover, it does not appear that Plaintiff was even in a place of public accommodation subject to Title II—at the time of the incident, he was apparently on the street. *See, e.g.*, *Ben v. Garden Dist. Ass'n*, No. 12-174, 2012 WL 2371395, at *1 n.4 (E.D. La. Mar. 13, 2012); *Ford v. New Britain Trans. Co.*, No. 3:03CV150 (MRK), 2004 WL 3078827, at *3 (D. Conn. Dec. 21, 2004).

## IV. Claims Against the State of New York

Plaintiff appears to seek damages from the State of New York. However, the Eleventh Amendment bars federal claims against states, absent their consent to such suits or an express statutory waiver of immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). New York has not consented to suit in federal court, *see Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977), nor has Congress abrogated states' immunity in enacting § 1983 or RICO, the bases of Plaintiff's

remaining claims, *see Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990) (discussing § 1983); *Molina v. New York*, 956 F. Supp. 257, 260 (E.D.N.Y. 1995) (discussing § 1983 and RICO). Accordingly, Plaintiff's claims against the State of New York must be dismissed under 28 U.S.C. § 1915(e)(2)(B)(iii) for seeking "monetary relief from a defendant who is immune from such relief."

## V. Claims Against the Niagara Falls Police Department and Niagara County Sheriff's Office

Plaintiff attempts to assert claims against the Niagara Falls Police Department and Niagara County Sheriff's Office. Of the remaining claims in Plaintiff's Amended Complaint—his Fourth Amendment claim and his civil RICO claim—neither is cognizable against either defendant. As administrative arms of Niagara Falls and Niagara County, the Niagara Falls Police Department and Niagara County Sheriff's Office are part of those same municipalities; they are not independent, suable entities. *See, e.g.*, *Perros v. County of Nassau*, 238 F. Supp. 3d 395, 400 (E.D.N.Y. 2017) ("It is well-established that '[u]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued.' " (quoting *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002))). The claims against the Niagara Falls Police Department and Niagara County Sheriff's Office must therefore be dismissed under 28 U.S.C. § 1915(e)(2)(B)(i) as legally frivolous.

Even if Plaintiff's claims were construed to be asserted against the actual municipalities—the City of Niagara Falls and Niagara County—they would still fail. Municipalities "cannot be held liable in a RICO case as a matter of law." *Frooks v. Town of Cortlandt*, 997 F. Supp. 438, 457 (S.D.N.Y. 1998). With respect to any claim brought under § 1983, which includes Plaintiff's Fourth Amendment claim, Plaintiff would need to plead a constitutional deprivation resulting from

"action pursuant to official municipal policy." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. Dep't of Social Servs. of N.Y.C.*, 436 U.S. 658, 694 (1978)). However, Plaintiff does not plead any facts related to the execution of a policy or custom of the City or County—his sole contentions appear to relate to the actions of individual persons. Accordingly, if the defendants are treated as the actual municipalities, then Plaintiff's RICO claim would still be dismissed under 28 U.S.C. § 1915(e)(2)(B)(i) as legally frivolous, and any cause of action brought pursuant to § 1983 would be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failing to state a claim.

## VI. Claims Against Mayor Dyster and Superintendent DalPorto

Plaintiff has sued Mayor Dyster and Superintendent DalPorto in their official capacities. *See* ECF No. 3, at 1; ECF No. 7-1, at 1. Like the Niagara Falls Police Department and Niagara County Sheriff's Office, Mayor Dyster and Superintendent DalPorto cannot be held liable on a civil RICO claim. *See Frooks*, 997 F. Supp. at 457 ("[B]ecause [a municipality] cannot be held liable under RICO as a matter of law, neither may the [municipality's] employees in their official capacities."). Accordingly, Plaintiff's RICO claim against them must be dismissed under 28 U.S.C. § 1915(e)(2)(B)(i) as legally frivolous. With respect to a claim brought under § 1983, a suit against a municipal employee in an official capacity is properly understood as a suit against the municipality. *See, e.g.*, *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002). For the reasons discussed, Plaintiff fails to plead any facts to support holding either the City of Niagara Falls or the Niagara County Sheriff's Office liable for any constitutional violations under § 1983.

Even if the claims were construed to be brought against Mayor Dyster and Superintendent DalPorto in their individual capacities, they would still fail. To sufficiently plead individual liability under § 1983, Plaintiff must provide facts showing each "defendant's personal

involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138–39 (2d Cir. 2013). In *Colon v. Coughlin*, the Second Circuit instructed that

> [t]he personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation[;] (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong[;] (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom[;] (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts[;] or (5) the defendant exhibited deliberate indifference to the rights of [persons] by failing to act on information indicating that unconstitutional acts were occurring.

58 F.3d 865, 873 (2d Cir. 1995). Whether the pleading standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), heightened the showings formerly sufficient under *Colon* does not affect the Court's analysis, because Plaintiff's claims against Mayor Dyster and Superintendent DalPorto would fail to survive even *Colon*'s requirements. *See, e.g.*, *Grullon*, 720 F.3d at 139 (using the same approach).

In both his Amended Complaint and proposed Second Amended Complaint, Plaintiff maintains that he filed complaints with Mayor Dyster and Superintendent DalPorto after the incident at Panera Bread. *See* ECF No. 3, at 4–5; ECF No. 7-1, at 4. He does not, however, "allege when and where those [complaints] were sent, what they said, or how they were sent." *Guillory v. Cuomo*, 616 F. App'x 12, 14 (2d Cir. 2015) (summary order) (determining that the district court had correctly dismissed claims of personal involvement); *compare id.*, *with Grullon*, 720 F.3d at 140–41 (instructing that, where the court had a copy of the letter in question, the plaintiff would be entitled to an inference of the supervisory defendant's awareness where the pleadings also "contained factual allegations indicating that the [l]etter was sent to the [defendant] at an appropriate address and by appropriate means"). Rather, Plaintiff simply maintains that Mayor

9

Dyster and Superintendent DalPorto were "made aware of and briefed regarding these matters."[4] ECF No. 3, at 4. Without more, Plaintiff fails to sufficiently plead the personal involvement required to hold a supervisor individually liable under § 1983. Thus, construing the allegations as asserted against Mayor Dyster and Superintendent DalPorto in their individual capacities does not save these claims from dismissal.

## VII. Opportunity to Amend

While the Court understands that it should freely give leave to amend, *see* Fed. R. Civ. P. 15(a)(2), Plaintiff has already submitted an Amended Complaint and a proposed Second Amended Complaint. The Court also notes that, since the filing of his proposed Second Amended Complaint (ECF No. 7-1), Plaintiff has continued to send the Court letters and documents containing descriptions of additional exchanges with which he takes issue. *See* ECF Nos. 11–12, 14–21. To the extent that Plaintiff wanted to the Court to consider new material, he should have submitted a formal motion to the Court. Nevertheless, the Court has reviewed these documents and determined that they do not remedy the defects in these pleadings. The Court thus declines to permit Plaintiff to further amend his Amended Complaint or proposed Second Amended Complaint, as such repleading would be futile. *See Ruffolo*, 987 F.2d at 131.

---

[4] The proposed Second Amended Complaint would add only the following: (1) "all of the Defendants including their superiors have been made aware of their wrongdoings on no less than two separate occasions since 03/08/2017 via USPS First Class Mail and other mailing methods"; (2) "[a] report for public harassment was submitted to NFPD via an online channel on 03/15/2017"; and (3) "[a]n additional report for public harassment was submitted to NFPD on 07/06/2017 via the same online channel." ECF No. 7-1, at 11. Plaintiff also maintains that Mayor Dyster's notice and briefing of the matters was "within 48 hours by USPS First Class Mail after Event I occurred." *Id.*

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion to proceed *in forma pauperis* is GRANTED, and the Amended Complaint (ECF No. 3) is DISMISSED WITH PREJUDICE. Given the dismissal of Plaintiff's federal claims, the Court declines to exercise jurisdiction over any remaining state law claims, which are thus DISMISSED WITHOUT PREJUDICE. *See* 28 U.S.C. § 1367(c)(3). Plaintiff's Motion to Appoint Counsel (ECF No. 13) is DENIED AS MOOT.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *See Coppedge v. United States*, 369 U.S. 438 (1962). Requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

The Clerk of Court shall close this case.

IT IS SO ORDERED.

DATED: January 25, 2018
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court